1  MARK GOLDROSEN, CBN 101731
   Attorney at Law
2  255 Kansas Street, Suite 340
   San Francisco, California 94103
3  Telephone: (415) 565-9600
   Facsimile: (415) 565-9601
4  markgoldro@aol.com

5  Attorney for Defendant
   DENIS JOSUE MONCADA-CANACA
6

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9                       SAN FRANCISCO VENUE

10

11 UNITED STATES OF AMERICA,        )    No. 24-cr-00498-001 WHO
                                    )
12              Plaintiff,          )
                                    )    DEFENDANT MONCADA-CANACA'S
13                                  )    SENTENCING MEMORANDUM
       vs.                          )
14                                  )
   DENIS MONCADA-CANACA,            )
15                                  )
              Defendant.            )
16                                  )    DATE: January 29, 2026
                                    )    TIME: 1:30 p.m.
17 _____       DEPT: Hon. William H. Orrick III

18        Defendant DENIS MONCADA-CANACA appears before this honorable Court for

19 entry of judgment and sentencing. To begin, Mr. Moncada-Canaca fully accepts

20 responsibility for his criminal conduct. In his own words, he wrote to the Court: "I feel very

21 bad and I made very bad decisions." PSR at ¶ 15.

22        With full remorse for the harm he caused, and for the reasons set forth herein, Mr.

23 Moncada-Canaca respectfully requests that the Court sentence him to 36 months of custody,

24 followed by four years of supervised release with appropriate conditions, as determined by

25 the Court. This sentence is warranted by the many circumstances in mitigation related to Mr.

26 Moncada-Canaca's background and character.

27 **I.    MR. MONCADA-CANACA'S BACKGROUND AND CHARACTER**

28

DEFENSE SENTENCING MEMORANDUM, CASE NO. 24cr00498-001 WHO

## A.    Trauma During Denis's Childhood and Youth

Denis's background is marked by a collection of negative experiences that demoralized and debilitated him, resulting in cumulative trauma. Each additional trauma intensified the overall negative impact on Denis's functioning when young.

Denis is now 23 years old. One year after his birth in Honduras, his parents separated and left him behind. His father immigrated to the United States to look for work. His mother moved to a different town and had no contact with Denis until about eight years ago. PSR at ¶¶ 65, 66.

Denis and his sister moved in with their paternal grandparents and uncle in a two-room house. While there was food to eat, the family was very poor and only had the bare essentials. The home had no indoor plumbing and the family's only income was the money sent by Denis's father from the United States. PSR at ¶ 66.

Tragedy struck when Denis was nine years old. His beloved grandmother died. The death was very traumatic for Denis and he became depressed. It was also very traumatic for his grandfather who also became depressed and began drinking alcohol daily. Shortly thereafter, Denis's grandfather left to live with his own grandmother. He took Denis's sister with him, but left Denis behind because he did not have enough money to care for both of them, At the same time, Denis's father was incarcerated in the United States so he was no longer providing financial support. PSR at ¶ 67.

Denis found himself alone without any parental support. From ages 10 to 12 he lived on the streets by himself, using marijuana and cocaine to cope. At the same time, he was regularly targeted by gang members, who threatened to kill him and his family unless he joined the gang. As a result of these dire circumstances, Denis decided to immigrate to the United States at the age of 12. *Ibid.*

The trip to the United States took about a month. Denis had to walk for days at a time, sometimes with no food. When he crossed the border, immigration officials placed him in various foster homes until he voluntarily returned to Honduras two years later. After three

months in Honduras, Denis again immigrated to the United States. Upon arriving, immigration officials placed him in a juvenile facility in Yolo County for approximately five months. He was then sent to the BCFS San Antonio Transitions Center in San Antonio, Texas for four months. Upon his release from the center, Denis moved to Oakland to live with a cousin. PSR at ¶ 68.

Unfortunately, Denis's daily use of marijuana and cocaine continued through this period of instability, up until the time of his present incarceration. PSR at ¶ 77. He fathered a son and then began a long-term relationship with Kelly Magana. Denis and Kelly do not have their own children, but Denis has taken on the role of being a stepfather to Kelly's son. *Id.*; *see also* Letter from Kelly Magana, attached as Exhibit A. Kelly writes that Denis "will take [her son] to school and pick him up, chaperone for school field trips, he will make meals for my son and take care of him. They build (sic) this trust and positive relationship." Exhibit A.

The relationship between Denis and Kelly has been marred by allegations of domestic violence committed by Denis. The relationship, however, remains strong and Kelly describes Denis as a "sweet and lovely person," with "a good heart." *Id.*; PSR at ¶ 71. She also notes that Denis "has been through a lot" in his life and that he struggles with substance abuse. *Id.* Kelly believes that because Denis did not have support or guidance growing up, he made bad decisions, leading to the criminal conduct in this case. PSR at ¶ 71. Denis attributes his selling of drugs to his desperation to obtain money to support his impoverished family in Honduras and his own drug use. PSR at ¶ 15.

## III.    PLEA AGREEMENT

Mr. Moncada-Canaca and the government entered into a written plea agreement pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure. Mr. Moncada-Canaca agreed to plead guilty to distribution of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c) [Counts 1, 3]; and distribution of 40 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi) [Count 2]. The plea agreement does not include recommendations

1    regarding Mr. Moncada-Canaca's applicable Guidelines range or Criminal History Category. The

2    parties agreed that the amount of fentanyl attributable to Mr. Moncada-Canaca was 193.8 grams. *Id.*

3    at 4. Finally, the plea agreement permits Mr. Moncada-Canaca to seek a downward variance from

4    the applicable Guidelines range based on the 18 U.S.C. § 3553(a) factors, but he cannot seek a

5    sentence less than 36 months. *Id*. at 5.

6    **IV.    PRESENTENCE INVESTIGATION REPORT**

7          The PSR calculates Mr. Moncada-Canaca's total offense level to be 23, and his

8    Criminal History Category to be IV. PSR at ¶¶ 27, 34. The defense does not object to these

9    calculations. The PSR recommends a downward variance from the applicable Guidelines

10   Range and that Mr. Moncada-Canaca be sentenced to 60 months in custody. PSR Sent. Rec.

11   at 1. In support of a downward variance, the PSR notes that Mr. Moncada-Canaca had a

12   difficult upbringing in Honduras, he was homeless at the age of 12, and he previously

13   participated in treatment programs for mental health and substance abuse. *Id*. at 2. Mr.

14   Moncada-Canaca agrees with the PSR that a downward variance is warranted, but asks that

15   the Court vary downward even further.

16   **IV.    MR. MONCADA-CANACA RESPECTFULLY REQUESTS THAT HE BE**
17   **SENTENCED TO THREE YEARS (36 MONTHS) IN CUSTODY FOLLOWED**
     **BY FOUR YEARS OF SUPERVISED RELEASE BASED ON MITIGATING**
18   **CIRCUMSTANCES REGARDING HIS CHARACTER AND BACKGROUND.**

19         In *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008), the Ninth Circuit

20   explained that,

21       The overarching statutory charge for a district court is to "impose a sentence
         sufficient, but not greater than necessary" to reflect the seriousness of the
22       offense, promote respect for the law, and provide just punishment; to afford
         adequate deterrence; to protect the public; and to provide the defendant with
23       needed educational or vocational training, medical care, or other correctional
         treatment.  18 U.S.C. § 3553(a) and (a)(2).

24         All sentencing proceedings are begun by the district court calculating the applicable

25   guidelines range. The district court then should consider the sentencing factors set forth in

26   section 3553(a) to determine if they support the sentence suggested by either of the parties.

27   *Carty*,  520 F.3d at 991. These factors include:

28

DEFENSE SENTENCING MEMORANDUM, CASE NO. 24cr00498-001 WHO                    4

the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and the sentencing range established in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims. 18 U.S.C. § 3553(a)(1)-(7).

*Id*.

Here, as identified above and in the PSR, there are a myriad of sentencing factors that support the sentence requested by Mr. Moncada-Canaca.

## A.    Extreme Remorsefulness

As noted in the PSR, Mr. Moncada-Canaca is extremely remorseful about his criminal conduct. He was motivated by what he believed was a desperate need to obtain money to send to his family in Honduras and to support his own significant drug use.

## B.    Early Admission of Guilt

Mr. Moncada- Canaca pled guilty and accepted responsibility at an early stage of the case. He did not file any pretrial motions or seek a trial date.

## C.    Childhood Trauma and Adverse Experiences

As explained above, Mr. Moncada-Canaca was confronted with extreme trauma and adversity as a child in Honduras. Both his parents abandoned him after birth. He was raised by his paternal grandparents, but his grandmother died when he was nine and his grandfather left him behind a year later. Mr. Moncada-Canaca became homeless and had to live on the streets, using cocaine and marijuana to cope. After gang members threatened to kill him if he did not join the gang, Mr. Moncada-Canaca immigrated to the United States by himself at age 12. Here, immigration placed him in foster homes until he was deported. Three months later he returned, only to be placed in various juvenile facilities. Eventually, he moved to Oakland to live with a cousin. All during this chaotic time he continued to self-medicate with cocaine and marijuana.

## D.    Efforts at Mental Health and Substance Abuse Treatment

In the past few years, Mr. Moncada-Canaca has participated in various treatment

1   programs in order to address his mental health issues and substance abuse problems. He
2   remains interested in receiving additional treatment for these issues.

3         **E.     Likely Deportation to Honduras**

4         As a result of this conviction, Mr. Moncada-Canaco will almost certainly be deported
5   to Honduras, where he will face difficult circumstances, including extreme poverty and the
6   threat of violence from gangs.

7         **F.     Lack of Prior Incarceration at a Prison**

8         Although Mr. Moncada-Canaca has served custodial sentences in the past, these
9   sentences have always been in county jail facilities. He has never been incarcerated in an
10  adult prison, as he will be in this case. In addition, because he earned half-time credits in his
11  state court incarcerations, he has never before served a sentence as long as three years.

12  **V.    CONCLUSION**

13        Due to the many mitigating circumstances outlined above and in the PSR, the Court
14  should sentence Mr. Moncada-Canaca to three years (36 months) in custody followed by four
15  years of supervised release with appropriate conditions. This sentence reflects the minimum
16  necessary to achieve the sentencing objectives set forth in 18 U.S.C. § 3553(a)(2).

17  DATED: January 22, 2026              Respectfully submitted,

18
19                                        /s/ Mark Goldrosen
                                          MARK GOLDROSEN
                                          Attorney for Defendant
20                                        DENIS JOSUE MONCADA-CANACA

21
22
23
24
25
26
27
28